UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────────────────────
PROVIDENT BANK,

                          Plaintiff, and

FIRST SAVINGS BANK, FSB

                          Intervening Plaintiff,

          -against-

COMMUNITY HOME MORTGAGE CORP.,
COMMUNITY HOME FUNDING GROUP, LTD.,
and IRA SILVERMAN,

                          Defendants.
───────────────────────────────────────────────

**MEMORANDUM OF DECISION AND ORDER**
02-CV-5219 (DRH)(JO)

**APPEARANCES:**

**For Plaintiff Provident Bank:**
**Bruce S. Edington**
**Todd M. Galante**
**Vincent S. Ziccolella**
St. John & Wayne, LLC
Two Penn Plaza East
Newark, New Jersey 07105

**For the Intervening Plaintiff First Savings Bank**
**Robert J. Lanza**
Sonnenschein Nath & Rosenthal
1221 Avenue of the Americas
New York, New York 10020

**For the Proposed Intervening Plaintiff WarehouseOne Acceptance Company IV, LLC**
**David S. Tannenbaum**
Duan Morris LLP
380 Lexington Avenue
Suite 3200
New York, New York 10163

**For the Proposed Intervening Plaintiff Netbank**
**Thomas E. Stagg**
Simmons, Jannace & Stagg, LLP
75 Jackson Avenue
Syosset, New York 11791

**For the Defendants**
**Philip E. Silberberg**
190 Soundview Avenue
White Plains, New York 10606-3811

**Robert J. Ansell**
Silverman, Perlstein & Acampora, LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753

**HURLEY, District Judge:**

Presently before the Court are the motions by WarehouseOne Acceptance Company IV, LLC ("WACIV") and Netbank, successor in interest to RBMG ("Netbank")[1] to intervene in this case as plaintiffs pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, or alternatively, pursuant to Rule 24(b)(2). For the reasons stated below, the motions are granted in their entirety.

## BACKGROUND

This case arises out of an alleged fraudulent scheme perpetrated by Defendants Community Home Mortgage Corp. ("Community Corp."), Community Home Funding Group, LTD ("Community LTD") (collectively, "Community"), and Ira Silverman ("Silverman") with respect to various lenders. More specifically, the Complaint alleges that Community was a mortgage bank authorized to conduct mortgage banking operations in New York and various

---

[1] For purposes of simplicity, the Court will use the term "Netbank" when referring to both Netbank and its successor, RBMG.

other states. Because Community did not have the financial wherewithal to fund its own loans, it entered into Warehouse Loan and Security Agreements with various lenders to fund the mortgage loans it originated. The Complaint alleges that Plaintiff Provident Bank ("Plaintiff") entered into two such agreements with Community, whereby Plaintiff extended large amounts of financing to Community to fund certain mortgage loans. In exchange, Community provided Plaintiff with various forms of collateral, including the mortgages and/or security agreements that secured the underlying loans. In connection with one of these agreements, Silverman executed a guaranty, pursuant to which he personally guaranteed full, prompt, and unconditional payment of every liability of Community under the agreements. Thereafter, Community defaulted under both agreements.

The crux of the alleged fraud is that Community engaged in a scheme known as "double booking", whereby Community fraudulently obtained funding from Plaintiff and another lender, WarehouseOne, Inc ("WarehouseOne") based on the same underlying mortgage loans and fraudulently provided both lenders with what purported to be the same collateral, assignments and security interests. In that regard, the Complaint alleges that Plaintiff and WarehouseOne had sixty (60) common home improvement loans brokered by Community.

By Order dated September 27, 2002, the Court granted Plaintiff's request for a temporary restraining order enjoining Community from, inter alia, transferring any assets that were subject to liens and/or security interests held by Plaintiff and from engaging in any activity that would interfere with Plaintiff's ability to access its loan files, collateral, security and/or property. The Court also appointed Kenneth P. Silverman as temporary receiver (the "Receiver") to retain title and dominion over Community's assets. On October 8, 2002, the

Court granted Plaintiff permanent injunctive relief and permanently appointed the Receiver.

Thereafter, First Savings Bank ("FSB") filed for leave to intervene as a plaintiff, claiming that it too had been a victim of Community's double booking. By Order dated October 11, 2002, the Court granted FSB's motion pursuant to Rule 24(b)(2).[2]

On December 20, 2002, the Court issued a Supplemental Order which continued the terms and provisions of the Court's Permanent Injunction Order. The Supplemental Order further provided that Defendants were permanently enjoined from interfering with the Receiver's ability to access the loan files, collateral, security, and or property of Community "held for the benefit of any financial institution or lender they have transacted business with for the past 3 years." (Dec. 20, 2002 Order ¶ 2(a).) The Order also enjoined Defendants from disposing of any of its assets that were "subject to the liens and/or security interests held by any financial institution or lender defendants have transacted business with for the past 3 years. (*Id.* ¶ 2(d).)

By Order dated March 31, 2003, the Court enjoined and restrained all actions against Community pursuant to 29 U.S.C. § 1651(a)[3] and imposed an automatic stay analogous to that imposed by 11 U.S.C. § 362. Pursuant to this Order, all entities are restrained, inter alia, from commencing any action, enforcing any judgment or lien, or collecting any debt against Community.

---

[2] Because the Court found that FSB satisfied the standard for permissive intervention, the Court found it unnecessary to address FSB's request for intervention as of right pursuant to Rule 24(a)(2).

[3] Two pending actions against Community were excluded from the Court's Order. (*See* Mar. 31, 2003 Order (citing *Wells Fargo Home Mortgage Inc. v. Angelo Brackman*, No. ESX-F-8536-00 and *Ohio Civil Rights Commission v. Community Home Mortgage Corp.*, No. CV-75068).)

On November 24, 2003, the United States requested leave to intervene in this action for the limited purpose of seeking an order to stay discovery regarding individuals who may have information regarding matters that were the subject on an ongoing criminal investigation pertaining to Defendants. The Government's application to intervene was granted on December 8, 2003, and on December 16, 2003, the Court stayed discovery as to all persons employed or previously employed by Community, and their spouses, pending the criminal investigation. The stay was lifted on November 29, 2004.

## DISCUSSION

### I. *WACIV's Motion to Intervene*

WACIV moves to intervene as a plaintiff, alleging that it too was a victim of Community Corp.'s double booking. Specifically, WACIV alleges that pursuant to an agreement dated October 26, 2000, it extended large amounts of financing to Community Corp. to fund certain home improvement loans in exchange for a security interest in various collateral. The loan was guaranteed by Silverman. Upon Community Corp.'s default and in pursuit of its own collection efforts, WACIV learned of the present action and the stay imposed by this Court. WACIV refers the Court to paragraph 44 of the Complaint wherein Plaintiff alleges that it had sixty (60) common home improvement loans with WarehouseOne brokered by Community whereby Community pledged the same collateral, assignments and security interests. WACIV contends that this allegation is technically incorrect in that it in fact, as a subsidiary of WarehouseOne, is the entity that had extended the financing to Plaintiff. WACIV now submits that absent intervention, it will have no recourse for its claims and may not be able to satisfy any judgment it receives if the assets obtained by the Receiver are distributed solely to the parties

5

present in the instant action.  WACIV's motion is unopposed.

      *A.*        *WACIV's Motion to Intervene Under Rule 24(a)(2)*

Federal Rule of Civil Procedure 24(a)(2) provides:

> (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In order to intervene as of right, an applicant must "(1) file timely, (2) demonstrate an interest in the action, (3) show an impairment of that interest arising from an unfavorable disposition, and (4) have an interest not otherwise adequately protected." *United States v. State of New York*, 820 F.2d 554, 556 (2d Cir. 1987); *see also United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994) (same).  Failure to satisfy any one of these requirements is sufficient grounds to deny the application. *Id.*

Here, the Court finds that all four factors favor intervention by WACIV in this action.  With regard to timeliness, among the factors to be taken into account include "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *See Pitney Bowes*, 25 F.3d at 70 (citing *State of New York*, 820 F.2d at 557).  Here, there is no indication that WACIV knew or should have known of this action prior to its current application.  In addition, with respect to prejudice to existing parties, it is significant that there has been no opposition to WACIV's motion.  Moreover, WACIV claims that additional discovery will not be

necessary should the motion be granted and no party has disputed this assertion. Thus, there is no basis to conclude that WACIV's intervention will delay the outcome of this case or prejudice the other parties in any way.

Moreover, WACIV will suffer prejudice if is not permitted to intervene because of this Court's stay precluding it from bringing an independent lawsuit. Finally, there are no unusual circumstances present. Accordingly, WACIV's application to intervene is timely.

The remaining Rule 24(a)(2) requirements compel WACIV to demonstrate that it has an interest in the action, not otherwise protected, that will be impaired from an unfavorable disposition. *See Pitney Bowes*, 25 F.3d at 70. Here, it is unquestionable that WACIV has a direct interest in this action because WACIV's claims arise out of the same transactions that are the subject of the instant case. Both Plaintiff and WACIV allege that Defendants fraudulently obtained funding from them based on the same underlying loans and fraudulently provided both Plaintiff and WACIV with what purported to be the same collateral, assignments, and security interests. Moreover, the assets upon which WACIV has a direct claim against are under the control of the Receiver. This fact, together with the Court's issuance of a stay, prevent WACIV from pursuing an independent collection action against Defendants. Finally, no existing party adequately represents the interests of WACIV. Accordingly, WACIV's application to intervene in this case pursuant to Rule 24(a)(2) is granted.

### B.   *WACIV's Motion to Intervene Under Rule 24(b)(2)*

Finally, the Court notes that WACIV's application also satisfies the standard for permissive intervention. Rule 24(b)(2) provides that "[u]pon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action

7

have a question of law or fact in common." Here, as evidenced by the allegations in the Complaint, WACIV's claim and the main action have questions of law and fact in common that stem from both parties being victimized by Community's alleged double booking. Accordingly, WACIV's motion to intervene is granted under Rule 24(b)(2) as well.

## II.     *Netbank's Motion to Intervene*

Netbank seeks leave to intervene as a plaintiff pursuant to Rule 24(a)(2), or alternatively, Rule 24(b)(2), based on an independent form of double booking allegedly committed by Community. Essentially, Netbank alleges that once Community received financing from the original lenders to fund its loans, it would then sell the loans to investors. Community was required to use the funds received upon the sale of the loans to repay the original lenders, which would then assign the loan documents and collateral to the investors. The double booking allegedly unfolded when Community sold the *same* loans to two separate investors, thereby misappropriating for themselves the cash from one of the investors. In that case, only one of the original lenders would be paid in full and the two investors would be in the unfortunate position of having a recorded interest in the same loans. In addition, the investors would have a competing interest in these loans with the unpaid original lender.

The proposed Complaint submitted by Netbank alleges that Netbank, as an investor, purchased mortgage loans from Community Corp. which fraudulently sold these loans to another investor. The proposed Complaint further alleges that FSB was on the other side of these transactions, as the original lender which provided the original funding to Community for these loans. Since that time, Netbank has serviced these loans and collected payments due thereunder.

8

Netbank's proposed complaint seeks a declaratory judgment directing that the mortgage loans, together with all prior and future payments on these loans, are the property of Netbank and that any interest FSB may have in these loans is subordinate to Netbank's interest therein. Netbank also asserts claims against Defendants for breach of contract, fraud and civil RICO. Netbank argues that even if the Court determines that Netbank does not have a priority interest in the mortgage loans, it should still be permitted to intervene so that it may proceed directly against Defendants on its claims for damages.

FSB does not object to Netbank's motion to intervene to the extent Netbank seeks relief from Defendants. FSB does oppose Netbank's motion, however, to the extent Netbank seeks declaratory relief against FSB.[4] The Court begins with an analysis of Netbank's proposed claim for a declaratory judgment.

### A. *Netbank's Request to Seek Declaratory Relief*

FSB contends that the Court should abstain from entertaining Netbank's request for declaratory relief because the same issues are already being litigated in an action pending in Texas state court. A brief procedural history of the Texas action, as well as other related lawsuits, follows.

### 1. *Related Lawsuits*

On August 20, 2004, the Receiver initiated an action against Netbank on behalf of FSB in the Eastern District of New York seeking, inter alia, a declaratory judgment declaring that the mortgage loans were the property of FSB, which has a first recorded lien on the loans,

---

[4] Although FSB's opposition papers were not filed in a timely fashion, in the interests of justice, the Court has considered them.

and thus has priority over Netbank's interest therein. The complaint alleged that FSB was entitled to collect all payments Netbank received on these loans, as well as any and all future payments. *See Kenneth P. Silverman, Esq. as Receiver of Community Home Mortgage Corporation and Community Home Funding Group, Ltd. v. Washington Mutual Bank and RBMG, Inc.*, No. 04 CV 3723 (E.D.N.Y. 2004). On February 25, 2005, the Receiver filed a notice of voluntary dismissal, apparently based on a lack of standing, and the case was closed.

On March 4, 2005, Southwest Securities Bank, as successor in interest to FSB,[5] filed a lawsuit against Netbank in the District Court of Texas, Tarrant County. *See Southwest Securities Bank f/k/a First Savings Bank, F.S.B. v. Washington Mutual Bank and RBMG., Inc.*, No. 141 210198 05 (Dist. Ct. Tarrant County 2005). In that action, FSB alleges that it funded sixteen Community loans which were also funded by Netbank or Washington Mutual Bank ("Washington Mutual") pursuant to Community's double booking scheme. In those instances, FSB extended large amounts of financing to Community to fund specified mortgage loans which were later sold to either Netbank or Washington Mutual. FSB further alleges that for eleven of those sixteen mortgages, FSB recorded its assignment of mortgage with the appropriate recoding agency prior to the time that either Netbank or Washington Mutual recorded their assignments. As a result, FSB claims to have a superior lien position. FSB seeks a declaratory judgment directing that these loans are the property of FSB, that FSB has a valid first recorded lien on the property securing these loans, and that Netbank and Washington Mutual have an interest that is subordinate and subject to FSB's interest therein.

---

[5] For purposes of simplicity, the Court will use the term "FSB" when referring to both FSB and Southwest Securities Bank.

Finally, on February 22, 2005, ten days before the Texas action was filed, Washington Mutual filed an action in New York Supreme Court, Nassau County against FSB and the Receiver seeking a declaration that some of the aforementioned loans are the property of Washington Mutual. On June 13, 2005, the New York court granted FSB's motion to dismiss due to the pending litigation in Texas involving "the[] same parties and issues." *See Washington Mutual Bank v. Southwest Securities Bank and Kenneth P. Silverman*, No. 2701/05 (N.Y. Sup. Ct. June 13, 2005).

By Order dated June 8, 2005, the Texas state court stayed the Texas action in its entirety until September 8, 2005, at which time the parties are directed to advise the court of the status of the New York litigation.

### 2. *The Court Declines to Abstain*

FSB argues that the Court should deny Netbank's motion to intervene, to the extent Netbank seeks a declaratory judgment, on abstention grounds because Texas is the more appropriate forum to resolve this dispute. The Second Circuit has summarized the relevant standard:

> Abstention is an extraordinary and narrow exception to a federal court's duty to exercise its jurisdiction. The Supreme Court has recognized that courts should abstain from the exercise of jurisdiction only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest. The test for determining whether abstention is appropriate, first articulated in *Colorado River,*[6] now requires examination of six factors: (1) assumption of jurisdiction over a *res*; (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6)

---

[6] *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

11

> protection of the federal plaintiff's rights. The test does not rest on
> a mechanical checklist, but on a careful balancing of the important
> factors as they apply in a given case, with the balance heavily
> weighted in favor of the exercise of jurisdiction.

*FDIC v. Four Star Holding Co.*, 178 F.3d 97, 101 (2d Cir. 1999) (internal quotation marks and citations omitted).

Before examining these factors, a threshold determination is whether there exists a "concurrent" or parallel state court proceeding. *See Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 603 (2d Cir. 1988); *Mouchantaf v. International Modeling and Talent Ass'n*, 368 F. Supp. 2d 303, 306 (S.D.N.Y. 2005). Proceedings are concurrent when both actions involve the same parties and issues. *See*, *e.g*, *State Farm Mut. Auto. Ins. Co. v. Mallela*, 175 F. Supp. 2d 401, 412 (S.D.N.Y. 2001). Here, FSB and Netbank are parties to both actions and the gravamen of the declaratory judgment claims is virtually identical. The only difference is that the Texas action involves an additional defendant, to wit, Washington Mutual, and FSB asserts additional claims against Netbank and Washington Mutual for breach of fiduciary duty, unjust enrichment, and conversion. Neither of these factors renders the proceedings non-parallel. *See Mouchantaf*, 368 F. Supp. 2d at 306. Consideration of *Colorado River* abstention in this case is therefore appropriate.

### a. *Assumption of Jurisdiction Over a Res*

"The Supreme Court has recognized that 'in cases where a court has custody of property, that is, proceedings in rem or quasi in rem . . . the state or federal court having custody of such property has exclusive jurisdiction to proceed.'" *FDIC*, 178 F.3d at 102 (quoting *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964)); *see also Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466 (1939) ("[I]f the two suits are in rem, or quasi in rem, so that the

court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other."). Thus, this first factor is dispositive. *Id.*

This rule applies "in cases that are akin to in rem or quasi in rem, where the court controls the property – for example, suits brought to marshall assets, administer trusts, or liquidate estates." *Double Alpha, Inc. v. Mako Partners, L.P.*, No. 99 CIV. 11541, 2001 WL 492436, at *2 (S.D.N.Y. May 9, 2001) (citing *Lankenau v. Coggeshall & Hicks*, 350 F.2d 61, 64 (2d Cir. 1965)). Thus, by analogy to the instant case, a debtor's estate in bankruptcy, comprised of all of the debtor's property, is a *res*. *See In re Metromedia Fiber Network, Inc.*, 299 B.R. 251, 273 (Bankr. S.D.N.Y. 2003).

In the instant case, neither this Court nor the Texas court has jurisdiction over any property that is the subject of the dispute between FSB and Netbank. Thus, this factor does not mandate this Court's exclusive jurisdiction to proceed. Accordingly, because no court may claim jurisdiction over the *res*, this factor weighs against abstention. *See Village of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) ("We have held that the absence of a *res* point[s] toward exercise of federal jurisdiction.") (citation and internal quotation marks omitted).[7]

### b. *Inconvenience of the Forum*

FSB argues that Texas is the more convenient forum because its employees and loan documents are there and because its contract with Community was executed in Texas and is governed by Texas law. In addition, FSB notes that Netbank's employees and loan documents

---

[7] To the extent this Court has jurisdiction over a *res*, to wit, Community's assets, this *res* is not the subject of Netbank's proposed declaratory claim against FSB, which seeks solely to establish which party holds the superior interest in the disputed loans.

are not located in either Texas or New York. Netbank counters that it possesses the relevant notes and mortgages, the heart of this matter, and emphasizes that they are not located in Texas. Further, Netbank asserts that it is irrelevant that the FSB-Community contract was executed in Texas as the notes were signed in New York and are secured by mortgages on properties in New York.

FSB cannot have it both ways. On the one hand, it claims that its dispute with Community is independent from its dispute with Netbank and thus there is no overlap between the issues to be decided by this Court, i.e., claims against Community, and the issues to be decided by the Texas court, i.e., which lender holds the superior interest. On the other hand, FSB seeks to persuade the Court that this factor favors abstention by interjecting issues that pertain to Community into the analysis. Because the Court finds that both parties are already litigating the issues related to, and underlying the lenders' dispute in New York, this forum is more convenient. In that regard, because FSB is a plaintiff in this action, its witnesses must appear here. Given the fact that the party found to hold a subordinate interest will almost certainly look to Community for indemnification, it is more practical to have the lenders' dispute litigated here so that the losing party may preserve its interest in Community's assets. Accordingly, the Court finds that this factor weighs against abstention.

        *c.*      *Avoidance of Piecemeal Litigation*

FSB argues that abstention would avoid piecemeal litigation because the Texas action not only involves the same claim at issue here, but is more comprehensive as it involves FSB's claims against Washington Mutual as well as additional causes of action for breach of fiduciary trust, unjust enrichment, and conversion. In addition, FSB contends that it makes more

14

sense to have all the lenders in one court which can deal *exclusively* with the rival claims between lenders and *not* all other claims being asserted against Community. The Court agrees with FSB that the danger of piecemeal litigation is high to the extent that both actions involve identical claims and the Texas action involves an additional party. However, there is also a danger of piecemeal litigation, albeit to a lesser degree, to the extent either FSB or Netbank proceeds directly against Community for damages following adjudication of their rights to the disputed loans. Nonetheless, because the danger of piecemeal litigation is higher should the Court entertain Netbank's request for declaratory relief, the Court finds that this factor slightly favors abstention.

### d.   *Order in which the Actions were Filed*

In evaluating the order in which jurisdiction was obtained, the Court does not look only to which complaint was filed first, but rather to how much progress has been made in the two actions. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983). The present action was commenced in September 2002. One month later, FSB intervened. On February 25, 2005, FSB initiated the Texas action. Thereafter, on March 28, 2005, Netbank requested leave to intervene in this case. Thus, FSB's declaratory judgment action in Texas was filed one month earlier than the present application.

Although FSB served initial discovery demands in the Texas action and Netbank filed a motion to dismiss for *forum non conveniens*, on June 8, 2005, the Texas court stayed the action in its entirety until September 8, 2005, at which time the parties are directed to advise the court of the status of the New York litigation. *See Southwest Securities Bank v. Washington Mutual Bank*, No. 141-210198-05 (Dist. Ct. Tarrant County June 8, 2005). During this period of

15

time, the parties are precluded from serving or responding to discovery requests as well as conducting any depositions. *Id.* The Texas court will address Netbank's motion as well as deadlines for responses to outstanding discovery at the September 8, 2005 conference. *Id.*

In the instant case, there has been no activity on Netbank's proposed claim. Because the case has not progressed far in either forum, this factor weighs against abstention. *See Tarka v. Greenfield Stein & Senior, LLP*, No. 00 Civ. 1262, 2000 WL 1121557, at *6 (S.D.N.Y. 2000).

### e. *Law that Provides the Rule of Decision*

The parties agree that the dispositive issue in this case will be the application of New York's version of the U.C.C. on how to perfect an interest in liens or title to property. FSB contends that because state law applies rather than federal law, the Court should abstain. FSB's reasoning is not persuasive. The Second Circuit has warned that "the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Village of Westfield*, 170 F.3d at 124. That is not the case in the present action. Moreover, this Court is clearly as familiar with New York's version of the U.C.C. as is the Texas court. Accordingly, this factor weighs against abstention.

### f. *Protection of the Federal Plaintiff's Rights*

In analyzing this factor, "federal courts are to determine whether the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Village of Westfield*, 170 F.3d at 124 (internal quotation marks and citations omitted). "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28.

16

Insofar as the dispute between FSB and Netbank is concerned, Netbank's rights will be adequately protected by the pending action in Texas. However, to the extent Netbank's interest is found to be subordinate to FSB's, Netbank will then seek damages from Community. The Texas court cannot preserve Netbank's rights in that regard because of the stay that is presently in effect precluding such suits against Community outside of this jurisdiction. In addition, any efforts to collect on a judgment against Community must be done here as well as all of Community's assets are under the exclusive control of this Court. On balance, however, this factor slightly favors abstention.

### g. *Balancing of Factors*

After careful consideration of the above, the Court finds that the balancing of factors weigh against abstention in this case. FSB has not established any "exceptional circumstances" justifying the Court's abdication of its "virtually unflagging obligation . . . to exercise the jurisdiction given [it]." *Colorado River*, 424 U.S. at 817. Although there is a danger of piecemeal litigation, because of the stay imposed by this Court on all actions against Community, as well as the permanent injunction issued by this Court granting the Receiver exclusive control over Community's assets, this is the only forum that can fully resolve *all* of the disputes arising from Community's alleged double booking. Accordingly, the Court declines to deny Netbank's motion to intervene on abstention grounds.

### B. *Netbank's Motion Satisfies Rule 24(a)(2) and Rule 24(b)(2)*

The Court finds that Netbank' motion satisfies all four factors under Rule 24(a)(2). As an initial matter, Netbank's motion is timely as it only learned of this action when it was sued by the Receiver on August 20, 2004. Netbank retained counsel and moved to dismiss

17

the Receiver's action. On February 25, 2005, the Receiver voluntarily dismissed the case. Thereafter, on March 4, 2005, FSB sued Netbank in Texas. Netbank filed the instant motion on March 28, 2005 and no party, other than FSB, has submitted any opposition. Thus, the Court finds that Netbank filed its motion in a timely fashion for purposes of Rule 24.

With regard to the remaining Rule 24 factors, the Court finds that Netbank, as a victim of Community's alleged double booking, has demonstrated an interest in this action. Moreover, absent intervention, Netbank's interest will be impeded as it is prohibited from pursuing an independent action against Community pursuant to this Court's March 31, 2003 Order. Finally, Netbank's interest in this litigation is not otherwise protected by any other party. Accordingly, Netbank's application to intervene in this case as of right is granted.

Finally, the Court notes that Netbank's application also satisfies the standard for permissive intervention under Rule 24(b)(2) as Netbank's claim and the main action have questions of law and fact in common arising out of Community's alleged double booking. Accordingly, Netbank's motion to intervene is granted under Rule 24(b)(2) as well.

**CONCLUSION**

For the foregoing reasons, the motions by WarehouseOne Acceptance Company IV, LLC and Netbank to intervene in this action as plaintiffs are GRANTED in their entirety.

Both parties shall file their intervenor complaints on or before August 11, 2005.

    **SO ORDERED.**

Dated: Central Islip, N.Y.
       July 28, 2005

                                                  /s_____
                                                  Denis R. Hurley,
                                                  United States District Judge