Simmons, Jannace & Stagg, L.L.P.
75 Jackson Avenue
Syosset, New York 11791
(516) 357-8100
By: Thomas E. Stagg (ts-0663)
Attorneys for Intervenor
Plaintiff NetBank

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
THE PROVIDENT BANK,

    Plaintiff, and

FIRST SAVINGS BANK, FSB,

   Intervenor Plaintiff, and

WAREHOUSEONE ACCEPTANCE COMPANY
IV, LLC

    Intervenor Plaintiff,

NETBANK,

    Intervenor Plaintiff,

   -against-

COMMUNITY HOME MORTGAGE CORP.,
COMMUNITY HOME FUNDING GROUP, LTD.
and IRA SILVERMAN,

    Defendants.
-----------------------------------X

**Civil Action No.**
**CV 02-5219(DRH)**

**AMENDED**
**INTERVENOR COMPLAINT**[1]

**Jury Trial Demanded**

**Hurley, J.**
**Orenstein, M.**

  Intervenor plaintiff, NetBank, as and for its amended complaint against defendants Community Home Mortgage Corp. ("Community Home Mortgage"), Community Home Funding Group, Ltd. (collectively "Community Defendants") and Ira Silverman ("Silverman"), and as and for its request for declaratory relief

_____

[1] The sole amendment is the demand for a jury trial.

against intervening plaintiff First Savings Bank and its successor in interest, Southwest Securities Bank ("Southwest"), avers as follows:

<u>PARTIES</u>

1. NetBank is a savings bank organized under the laws of the United States with its principal place of business in Alpharetta, Georgia and is a wholly owned subsidiary of NetBank, Inc. NetBank is successor in interest to RBMG, Inc. ("RBMG").

2. Community Home Mortgage Corp. is a corporation organized and existing under the laws of the State of New York, with its principal place of business existing or formerly existing at 510 Broad Hollow Road, Melville, New York.

3. Community Home Funding Group, Ltd. is a corporation organized and existing under the laws of the State of New York, with its principal place of business existing or formerly existing at 510 Broad Hollow Road, Melville, New York.

4. Community Home Funding Group, Ltd. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business existing or formerly existing at 510 Broad Hollow Road, Melville, New York.

5. Silverman is the founder, President and majority owner of Community Home Mortgage. Upon information and belief, Silverman is a citizen of the State of New York and resides at 1063 East 7th Street, Brooklyn, New York.

6.  Upon information and belief, Southwest is the successor in interest to First Savings Bank, F.S.B ("First Savings Bank").

7.  Upon information and belief, Southwest is a federally chartered savings bank with its principal place of business in Arlington, Texas and is a wholly owned subsidiary of SWS Group, Inc.

JURISDICTION & VENUE

8.  This is an action for declaratory and other relief arising out of mortgage loans sold by defendants to NetBank's predecessor in interest, RBMG.

9.  This Court has jurisdiction over the matter in controversy pursuant to 28 U.S.C. § 1331, as this matter involves a federal question under the Racketeer Influenced and Corruption Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO").  The Court has supplemental jurisdiction over NetBank's state law claims pursuant to 28 U.S.C. § 1367, as these claims arise out of the same transactions and series of events giving rise to NetBank's RICO claim.

10.  Jurisdiction is also proper in this Court based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.  The amount in controversy is satisfied because the value of the mortgages and notes exceeds $75,000.

11.  Furthermore, jurisdiction is proper with regard to

3

Southwest and its predecessor in interest, First Savings Bank, because First Savings Bank was granted the right to intervene as a plaintiff in this case, and has appeared in this case thereby availing itself of this court and the laws of this jurisdiction and further because First Savings Bank, through the court's appointed receiver for the Community Defendants, availed itself of this Court by seeking affirmative relief against NetBank's predecessor in interest, RBMG, in an action entitled *Kenneth P. Silverman, Esq. as Receiver of Community Home Mortgage Corporation and Community Home Funding Group, Ltd. v. Washington Mutual Bank and RBMG*, *Inc.,* CV 04-3723.

12.  Venue in this Court is proper based upon 28 U.S.C. § 1391 because jurisdiction is not founded solely on diversity of jurisdiction and a substantial portion, if not all, of the events giving rise to the claims for relief occurred within the State of New York and within the Eastern District of New York.

PROCEDURAL BACKGROUND

13.  On or about October 8, 2002, the court appointed Kenneth Silverman as the Community Defendants' receiver ("Receiver").

14.  First Savings Bank sought to intervene as a plaintiff in this action on or about October 8, 2002.

15.  In support of its intervention motion, First Savings

Bank informed the Court that it "has an interest in the action relating to the property that is the subject to the litigation."

16.  In further support, First Savings Bank wrote of the "critical importance of this action to the interests of FSB."

17.  In further support, First Savings Bank related how it and Provident Bank jointly retained a private investigator to monitor the Community Defendants.

18.  In further support, First Savings Bank disclosed that it "has been involved every step of the way, including appearances at the hearing before this Court regarding the appointment of a receiver and temporary injunctive relief."

19.  In further support, First Savings Bank asserted that it "had virtually an identical relationship with Community Corp. as did Provident and it was the same fraud and criminal conduct which damaged FSB's interests."

20.  In further support, First Savings Bank cited to the Second Circuit's policy of judicial economy preferring "intervention over subsequent collateral attacks."

21.  The court granted First Savings Bank's intervention as a plaintiff on or about October 11, 2002.

22.  Since then, First Savings Bank has participated in this lawsuit.

23.  On or about October 18, 2002, First Savings Bank's attorney, Robert J. Lanza, Esq., was admitted *pro hac vice* in

this court.

24.  On or about October 28, 2002, First Savings Bank filed with this Court a Notice of Disclosure of Interested Parties.

25.  First Savings Bank or its related entities have been served as a party in this action with pleadings and other documents, including but not limited to:

> a.  correspondence dated October 18, 2002 from Robert J. Ansell, attorney for the Receiver;
>
> b.  the Supplemental Order dated December 20, 2002 granting permanent injunctive relief, appointing a receiver, and granting other relief;
>
> c.  the Ohio Civil Rights Commission's opposition to the Receiver's motion for an order enjoining and restraining all actions against Community, dated February 21, 2003;
>
> d.  correspondence dated November 24, 2003 from Timothy S. Driscoll, Esq., United States Attorney for the Eastern District of New York, requesting permission to intervene; and
>
> e.  the motion to intervene filed by WarehouseOne Acceptance Company IV, LLC, dated February 25, 2005.

26.  On or about December 20, 2002, the Court permanently enjoined the Community Defendants, Silverman and others from engaging in any conduct that would interfere with, hinder, or in any way delay the Receiver's ability to access the loan files, collateral, security and/or property of Community held *for the benefit of any financial institution or lender* they transacted business with for the past three years (emphasis supplied).

27.   Intervenor plaintiff NetBank, or its predecessor in interest, RBMG, is a financial institution or lender that transacted business with the Community Defendants within three years prior to the issuance of the Court's permanent injunction on or about December 20, 2002.

28.  Upon information and belief, intervenor plaintiff First Savings Bank, or its successor in interest, Southwest, is a financial institution or lender that transacted business with the Community Defendants within three years prior to the issuance of the Court's permanent injunction on or about December 20, 2002.

29.  As such, NetBank, RBMG, Southwest and First Savings Bank are beneficiaries contemplated by the Court's December 20, 2002 order.

30.  The Receiver commenced the following three related fraudulent conveyance actions in the Eastern District of New York:

a)   *Kenneth Silverman, as Receiver of Community Home Mortgage Corporation and Community Home Funding Group, Ltd. v. Community Home Mortgage Corporation, Community Home Funding Group, Ltd., Jonathan Alderman Goldstein, and Jongold Development Corporation*, CV 03-02550;

b)   *Kenneth Silverman, as Receiver of Community Home Mortgage Corporation and Community Home Funding Group, Ltd. v. Community Home Mortgage Corporation, Community Home Funding Group, Ltd., and Joel Moskowitz*, CV 04-1764; and

c)   *Kenneth Silverman, as Receiver of Community Home Mortgage Corporation and Community Home Funding Group, Ltd. v. Community Home Mortgage Corporation, Community Home Funding Group, Ltd., and Frank Jackson*, CV 04-1767.

31.   Upon information and belief, these three lawsuits arise out of the Community Defendants' alleged fraud and criminal activity.

32.   On behalf of Southwest's predecessor in interest, First Savings Bank, the Receiver sued RBMG in the Eastern District of New York in an action entitled *Kenneth P. Silverman, Esq. as Receiver of Community Home Mortgage Corporation and Community Home Funding Group, Ltd. v. Washington Mutual Bank and RBMG, Inc.,* CV 04-3723 (Hurley, J.) (hereinafter "Southwest Action No. 1").

33.   In Southwest Action No. 1, the Receiver sought, among other things, to recover for the benefit of Southwest's predecessor, First Savings Bank, certain loans that were originated by Community Home Mortgage and sold to RBMG. (Southwest Action No. 1 Complaint, ¶ 21.)

34.   The Receiver asked the court to issue a declaratory judgment determining that the loans were the property of First Savings Bank and that RBMG's interest in the loans was subordinate to First Savings Banks' interest. (Southwest Action No. 1 Complaint, ¶ 28.)

35.  In addition, the Receiver sought a constructive trust for the benefit of First Savings Bank upon funds collected by RBMG, an award of monetary and statutory damages payable to First Savings Bank for amounts collected by RBMG, and that RBMG turn over to First Savings Bank the original loan documents and loan proceeds.  (Southwest Action No. 1 Complaint, ¶¶ 32, 34 & 38.)

36.  NetBank, as successor in interest to RBMG, moved to dismiss the Receiver's claims against RBMG in Southwest Action No. 1 on the grounds that the Receiver lacked standing to sue on behalf of First Savings Bank or Southwest.

37.  On or about February 25, 2005, the Receiver filed a notice of voluntary dismissal of Southwest Action No. 1 pursuant to Rule 41 of the Federal Rules of Civil Procedure.

38.  On or about March 4, 2005, First Savings Bank's successor, Southwest, filed a lawsuit against RBMG in state court in the District Court of Tarrant County, Texas, asserting virtually the same claims asserted in Southwest Action No. 1 (hereinafter "Southwest Action No. 2").

39.  In Action No. 1 and Action No. 2, First Savings Bank alleges it was defrauded by the Community Defendants' double booking scheme in which the Community Defendants obtained duplicate warehouse funding for the same loan, or assigned the same loans to two permanent investors, such as NetBank.

(Southwest Action No. 1, ¶¶ 18-19 & 22; Southwest Action No. 2, ¶¶ 12-13).

40.   In both suits, First Savings Bank alleges that the Community Defendants never repaid the funds loaned to it to finance mortgages.   (Southwest Action No. 1, ¶¶ 22-27; Southwest Action No. 2, ¶¶ 16-20).

41.   First Savings Bank further claims in both suits that some of the mortgages Community Home Mortgage issued were assigned to NetBank and that First Savings Bank is entitled to: (1) a declaration that the loans for which it provided warehouse financing are First Savings Bank's property, that First Savings Bank has a first recorded lien on the loans, and that NetBank's interests in the loans are subordinate to First Savings Bank's; (2) a constructive trust for the funds NetBank received and will receive on the loans; (3) recovery based on unjust enrichment; (4) recovery based on conversion; and (5) recovery of attorney's fees. (Southwest Action No. 1, ¶¶ 28-38; Southwest Action No. 2, ¶¶ 19, 21-32).

## FACTUAL BACKGROUND

42.   Community Home Mortgage is and/or was a mortgage banker licensed to conduct mortgage banking operations by the State of New York, and is and/or was licensed to conduct business as a finance lender, broker, mortgage lender, first

mortgage lender, second mortgage lender, home improvement mortgage lender, mortgagee broker, supervised loan licensee, residential mortgage originator, licensed lender, licensed mortgage banker, first mortgage banker, lender, supervised lender licensee, regulated loan licensee, consumer loan licensee, mortgage lender licensee and/or otherwise conducts business as a mortgage lender/broker/banker/purchaser in New York and other states. As a mortgage banker, Community Home Mortgage originated mortgage loans.

43. Upon information and belief, Community Home Funding Group, Ltd. is and/or was in the business of buying second mortgage and home equity loans from licensed brokers and banks in the wholesale market, and selling these second mortgages and home equity loans in the secondary market. Community Home Funding Group, Ltd. is conducting or has conducted business in various states, including New York.

44. On or about June 15, 2001, NetBank's predecessor, RBMG, entered into a Correspondent Mortgage Purchase Agreement ("Purchase Agreement") with Community Home Mortgage pursuant to which NetBank agreed to purchase mortgage loans originated by Community Home Mortgage.

45. NetBank purchased the following nine mortgage loans (collectively "the Mortgage Loans") from Community Home Mortgage

and, upon information and belief, received the original mortgage and note for each loan:

    i.    Loan Nos. YAR10031 & 2000191325, 688 South Pascack Road, Chestnut Ridge, New York 10977;

    ii.    Loan Nos. YAR10032 & 2000199861, 182 Cinnabar Land, Yardley, Pennsylvania 19067;

    iii.    Loan Nos. YAR10016 & 2000208141, 79 Landscape Avenue, Yonkers, New York 10705;

    iv.    Loan Nos. YR30835 & 2000217787, 2637 Rachel Street, Bellmore, New York 11710;

    v.    Loan Nos. YR30922 & 2000215862, 69 Salisbury Road, Yonkers, New York 10710;

    vi.    Loan Nos. YQF10558 & 2000221384, 109-42 153rd Street, Jamaica, New York 11433;

    vii.    Loan Nos. YWF11411 & 2000211246, 358 Atlantic Street, Central Islip, New York 11722;

    viii.    Loan No. 2000213574, 32 Clove Road, Haverstraw, New York 10927;

    ix.    Loan No. 2000204264, 178 Powell Avenue, Central Islip, New York 11722

46. NetBank is servicing or has serviced the Mortgage Loans.

47. Upon information and belief, the Community Defendants and Silverman engaged in a fraudulent scheme known as "double-booking" of loans they originated, including the Mortgage Loans.

48. Upon information and belief, the Community Defendants and Silverman obtained duplicate funding for one loan from two different warehouse lenders, and retained the entire value of

the loan for their own purposes.  Because only one of the two warehouse lenders would ultimately be paid for its investment after the loan was sold to a permanent investor, the investor and the unpaid warehouse lender would have conflicting recorded mortgages and assignments.

49.  Upon information and belief, the Community Defendants and Silverman would sell the same loan to two separate investors.  The warehouse lender would be paid in full, and the investors would have recorded an interest in the same loan documents.

50.  Upon information and belief, the Mortgage Loans were funded pursuant to the Community Defendants and Silverman's fraudulent double-booking scheme.

51.  Upon information and belief, NetBank's predecessor in interest, RBMG, provided funding for the closing of the Mortgage Loans directly at the time of the closing and Southwest's predecessor in interest, First Savings Bank, provided warehouse funding to Community Home Mortgage for the same loan.

52.  Upon information and belief, other warehouse lenders such as The Provident Bank and WarehouseOne Acceptance Company, IV, LLC entered into warehouse lender agreements with Community Home Mortgage.

53.  Upon information and belief, the Community Defendants and Silverman fraudulently obtained advances from these and

other lenders pursuant to their fraudulent double-booking scheme.

FIRST CLAIM
(declaratory judgment)

54. NetBank repeats and realleges the allegations contained in the preceding paragraphs as if more fully set forth herein.

55. Because First Savings Bank and its successor, Southwest, insist that their interests in the Mortgage Loans that NetBank purchased from Community Home Mortgage take priority over NetBank's interest, NetBank requests that this Court issue a declaratory judgment determining that the Mortgage Loans, including but not limited to the mortgages and notes and all prior and future payments on the Mortgage Loans, are the property of NetBank, and that any interest First Savings Bank, Southwest or Community Home Mortgage may have in the Mortgage Loans is subordinate and subject to NetBank's interest in them.

SECOND CLAIM
(breach of contract)

56. NetBank repeats and realleges the allegations contained in the preceding paragraphs as if more fully set forth herein.

57. Pursuant to Article III of the Purchase Agreement entered into by Community Home Mortgage and NetBank, Community

14

Home Mortgage agreed that all mortgages and notes purchased by NetBank would be, and would remain at all times, the property of NetBank.

58. NetBank purchased the Mortgage Loans from Community Home Mortgage.

59. If the claims asserted by plaintiff, The Provident Bank, and by other intervening plaintiffs are true, then Community Home Mortgage breached the Purchase Agreement by failing, among other things, to comply with its terms and with the requirements of applicable laws, rules, regulations, and generally accepted prudent banking and mortgage banking practices.

60. Pursuant to Article VIII of the Purchase Agreement, Community Home Mortgage agreed to indemnify and hold NetBank harmless from, among other things, any and all liabilities, claims, losses, expenses, costs or damages arising or related to:

    a. any act or omission of Community Home Mortgage or its agents;

    b. Community Home Mortgage's failure to perform any of its obligations under the Purchase Agreement; and

    c. Community Home Mortgage's breach of the Purchase Agreement.

61. Should the Court declare that the Mortgage Loans and all prior and future payments on the Mortgage Loans are <u>not</u> the

property of NetBank, then NetBank is entitled to indemnification and to recover from Community Home Mortgage and Silverman damages, including attorneys' fees, costs and expenses incurred by NetBank in connection with the Mortgage Loans and for Community Home Mortgage's fraud and breach of the Purchase Agreement.

62. Even if the court determines that the Mortgage Loans and all prior and future payments on the Mortgage Loans are the property of NetBank, then NetBank is nevertheless entitled to indemnification and to recover damages from Community Home Mortgage and Silverman pursuant to the terms of the Purchase Agreement.

<u>THIRD CLAIM</u>
(fraud)

63. NetBank repeats and realleges the allegations made in the preceding paragraphs as if fully set forth herein.

64. The Community Defendants and Silverman fraudulently provided banks and financial lending institutions with documents that purported to provide such banks and financial institutions with identical collateral and security interests in connection with the same residential mortgage loans for which RBMG had advanced substantial sums of money and for which such documents were provided to RBMG by the Community Defendants and Silverman.

65.   RBMG   had   no   knowledge   nor   reason   to   know   of   the fraudulent   nature   of   the   representations   made   to   it   by   the Community   Defendants   and   Silverman,   and   was   unaware   that   the Community   Defendants   and   Silverman   were   fraudulently   providing other   banks   and   financial   lending   institutions   with   documents that   purported   to   provide   such   other   banks   and   financial   lending institutions   with   identical   collateral   and   security   interests   in connection   with   the   same   residential   mortgage   loans   for   which RBMG   advanced   substantial   sums   of   money   and   for   which   such identical   collateral   and   security   interests   were   provided   to RBMG.

66.   If   RBMG   was   aware   that   the   Community   Defendants   and Silverman   were   fraudulently   providing   duplicate   documents   that purported   to   provide   the   same   collateral   and   security   to   other banks   and   financial   lending   institutions,   in   connection   with   the very   same   loans   that   were   the   subject   of   its   agreement   with Community   Home   Mortgage,   RBMG   would   not   have   advanced   any   sums to   the   Community   Defendants.

67.   The   Community   Defendants   and   Silverman   knew   or reasonably   should   have   known   that   if   RBMG   had   knowledge   that   the Community   Defendants   and   Silverman   were   providing   duplicate documents   and   purporting   to   provide   the   same   collateral   to   other banks   and   financial   lending   institutions,   in   connection   with   the very   same   loans   that   were   the   subject   of   its   agreement   with

17

Community   Home   Mortgage,   RBMG   would   not   have   advanced substantial sums of money to the Community Defendants.

68.  NetBank has been damaged as a result of the fraudulent conduct  and  misrepresentations  of  the  Community  Defendants  and Silverman in an amount to be determined at trial.

## FOURTH CLAIM
### (civil RICO)

69.  NetBank  repeats  and  realleges  the  allegations  made  in the preceding paragraphs as if fully set forth herein.

70.  NetBank is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

71.  Silverman  is  a  "person"  within  the  meaning  of  18 U.S.C. §§ 1961(3) and 1962(c) and (d).

72.  The  Community  Defendants  are  corporations  or  other legal  entities  comprising  an  enterprise  under  18  U.S.C.  § 1961(4).

73.  The  Community  Defendants  engaged  in  interstate commerce.

74.  Silverman,  and  other  persons  unknown  to  NetBank  at this time, were employed by the Community Defendants.

75.  Silverman,  and  other  employees  of  the  Community Defendants unknown to NetBank at this time, participated in, and/or conducted the affairs of, the Community Defendants.

76. Silverman, and other employees of the Community Defendants unknown to NetBank at this time, conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs, and conspired so to do, through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), that is,

a. Wire fraud by the receipt and making of interstate phone calls concerning fraudulent mortgage loans, including the Mortgage Loans, to RBMG, NetBank, First Savings Bank, Southwest, The Provident Bank, WarehouseOne Acceptance Company, IV, LLC and others unknown to NetBank at this time, in violation of 18 U.S.C. § 1343;

b. Mail fraud in violation of 18 U.S.C. § 1341 by sending the loan documents, including documents for the Mortgage Loans, through the U.S. Mail and/or private or commercial carrier to RBMG, NetBank, First Savings Bank, Southwest, The Provident Bank, WarehouseOne Acceptance Company, IV, LLC and others unknown to NetBank at this time; and/or

c. Transportation in interstate commerce to RBMG, NetBank, First Savings Bank, Southwest, The Provident Bank, WarehouseOne Acceptance Company, IV, LLC and others unknown to NetBank at this time, of goods and property, taken by fraud in violation of 18 U.S.C. § 2314.

77.   In connection with the Mortgage Loans, as described in the preceding paragraphs, and without the knowledge or consent of NetBank or RMBG, Silverman, and other employees of the Community Defendants unknown to NetBank at this time, agreed, combined, and conspired among themselves and with others unknown to NetBank to devise, intend to devise, and participate in - and did devise, intend to devise and participate in — a continuing scheme and artifice to defraud and steal, and for obtaining property and money by means of false and fraudulent pretenses, representations, and theft, and to conceal the fraud by false and fraudulent pretenses, representations, false declarations, and obstructions of justice.

78.   NetBank was injured in its business and property in an undetermined amount by reason of violations of 18 U.S.C. §§ 1962(c) and (d) committed by the Community Defendants and Silverman, within the meaning of 18 U.S.C. § 1964(c).

79.   The harm suffered by NetBank was proximately caused by the Community Defendants and Silverman fraudulently providing banks and financial lending institutions with mortgage loan documents that purported to provide such banks and financial institutions with identical collateral and security interests in connection with the same residential mortgage loans for which RBMG had advanced substantial sums of money and for which such

documents were provided to RBMG by the Community Defendants and Silverman.

80.  The Community Defendants and Silverman, in furtherance of their continuing scheme to defraud NetBank into providing funds for the Mortgage Loans, willfully converted to their own use the funds received from NetBank.

81.  NetBank is entitled to its attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c).

WHEREFORE, intervening plaintiff, NetBank, respectfully requests that it be awarded judgment:

1)   On the First Claim, declaring that the mortgages, notes, and all prior and future payments on the loans are the property of NetBank, and that any interest that First Savings Bank, Southwest or Community Home Mortgage may have in the loans is subordinate and subject to NetBank's interest in them;

2)   On the Second Claim:

(a)  against the Community Defendants and Silverman in the event that the Court determines that the Mortgage Loans and all prior and future payments on the Mortgage Loans are not the property of NetBank, for damages in an amount to be determined at trial, including attorneys' fees, costs and expenses incurred by NetBank in connection with the Mortgage Loans or Community Home Mortgage's breach of the Purchase Agreement; and

(b) against Community Home Mortgage, in the event that the Court determines that the Mortgage Loans and all prior and future payments on the Mortgage Loans are the property of NetBank, for damages in an amount to be determined at trial pursuant to the terms of the Purchase Agreement;

3) On the Third Claim, for damages in an amount to be determined at trial caused by the fraudulent conduct and misrepresentations of the Community Defendants and Silverman;

4) On the Fourth Claim, for damages in an undetermined amount and treble damages by reason of violations of 18 U.S.C. §§ 1962(c) and (d) committed by the Community Defendants and Silverman, within the meaning of 18 U.S.C. § 1964(c), in addition to attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c); and

5) granting NetBank such other and further relief as this Court deems just and proper.

Dated:   Syosset, New York
         August 16, 2005

                          Simmons, Jannace & Stagg, L.L.P.


                    By: /s/ Thomas E. Stagg
                          Thomas E. Stagg (ts-0663)

                          Attorneys for Intervenor Plaintiff
                          NetBank
                          75 Jackson Avenue
                          Syosset, New York 11791
                          (516) 357-8100

amend interv cmplt